2019 IL App (1st) 182442-U

SIXTH DIVISION
November 22, 2019

No. 1-18-2442

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BAKUL DAVÉ | ) | Petition for Review of an Order |
| | ) | of the Illinois Educational Labor |
| Petitioner-Appellant, | ) | Relations Board. |
| | ) | |
| v. | ) | No. 17 CA 0017-C |
| | ) | |
| STATE OF ILLINOIS EDUCATIONAL LABOR | ) | |
| RELATIONS BOARD and BOARD OF TRUSTEES OF | ) | |
| SOUTHERN ILLINOIS UNIVERSITY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Illinois Educational Labor Relations Board's order dismissing petitioner's complaint alleging that the Board of Trustees of Southern Illinois University violated section 14(a)(1) of the Illinois Educational Relations Board Act is affirmed.

¶ 2    Petitioner, Bakul Davé, a professor at Southern Illinois University, filed an unfair labor practice charge against respondent, the Board of Trustees of Southern Illinois University (SIU). The State of Illinois Educational Labor Relations Board (Board) directed the executive director of

the Board to issue a complaint on the issue of whether SIU violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14 (a)(1) (West 2016)) by failing to process petitioner's grievance. Following a hearing, the Administrative Law Judge (ALJ) issued an order dismissing the complaint and the Board affirmed. Petitioner appeals that decision. We affirm.

¶ 3     The following facts are taken from the common law record. Petitioner, a professor in the chemistry department at SIU since 1996, was a member of Southern Illinois University Carbondale Faculty Association, IEA-NEA (Union), a labor organization under section 2(c) of the Act (115 ILCS 5/2 (c) (West 2016)). The Union and SIU were parties to a collective bargaining agreement (CBA).

¶ 4     In May 2014, SIU terminated petitioner's employment. The Union filed a grievance against SIU challenging petitioner's termination. Following arbitration, in December 2015, the arbitrator concluded that SIU should reinstate petitioner to his former position. In February 2016, upon petitioner's return to employment, he requested SIU to assign him the same office and laboratory space that he had occupied before his termination. SIU assigned him to a different space. On February 18, 2016, petitioner, the Union, and SIU met to discuss petitioner's office and laboratory space assignments. Following the meeting, SIU, through the Interim Provost and Vice Chancellor for Academic Affairs, informed petitioner that it would contact him with the "decision related to your final office and lab space assignment." On February 21, 2016, SIU informed petitioner that it had reconsidered his office and laboratory space assignment request and that it was not going to assign him the space he had occupied before his termination. SIU directed petitioner to pick up the keys to the other space assigned to him.

¶ 5    On February 23, 2016, following a telephone meeting with the parties, the arbitrator issued a letter, clarifying that SIU was not required to assign petitioner to the exact same laboratory or office space that he had occupied before his termination and stating that SIU should return him to an "equivalently equipped" space for his teaching, research, and service obligations.  On February 24, 2016, petitioner sent an email to SIU, stating that SIU assigned him other laboratory and office space "despite my pleas that any alternate space other than what I had previously would irreversibly and irreparably harm my research prospects, potential and productivity." He stated that SIU "intended to cause deliberate harm" to him "in retaliation for my union activities." In an email dated March 6, 2016, petitioner informed SIU that the space assigned to him was causing him health problems.

¶ 6    On March 18, 2016, petitioner sent an email to the Provost at SIU, with the subject line "Informal Grievance – Request for Meeting." In the body of the email, petitioner stated:

> "With this message, I am requesting a meeting in accordance with the informal grievance process as provided in section 6.03 of the Collective Bargaining Agreement ('CBA') between the SIU Board of Trustees and the SIUC Faculty Association, IEA-NEA. The grievance issue concerns forced displacement from my office and research labs that denies me access to the lab space I have had for the past two decades."

On March 25, 2016, SIU requested an extension to respond to his request for an informal meeting. Petitioner granted SIU's request and, on April 11, 2016, SIU held an informal meeting. On April 21, 2016, SIU denied petitioner's grievance.

¶ 7    On September 14, 2016, petitioner was notified by the chair of the Department of Chemistry and Biochemistry that SIU had modified his "workload assignment." That same day,

petitioner sent an email to the dean of the College of Science, with the subject line "Grievance — workload assignment." In the body of the email, petitioner stated:

"I am writing this to request a meeting in accordance with the informal grievance process as provided in section 6.03 of the Collective Bargaining Agreement ('CBA') between the SIU Board of Trustees and the SIUC Faculty Association, IEA-NEA. The grievance issues concerns workload assignments for the spring 2016, fall 2016, and spring 2017 semesters."

Petitioner also requested copies of communications sent by various parties at SIU related to his "workload assignment" as well as documents related to other faculty members' workload assignments. Petitioner had initially asked the Union to pursue his grievance, but it declined to do so. SIU did not respond to petitioner's requests.

¶ 8    On October 7, 2016, petitioner filed an unfair labor practice charge with the Board, alleging that SIU violated sections 14(a)(1), 14(a)(3), and 14(a)(8) of the Act. Under section 14(a)(1) of the Act, educational employers are prohibited from "[i]interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2016). Sections 14(a)(3) and (a)(8) prohibit educational employers from, respectively, "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization" and "[r]efusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(3), (8) (West 2016).

¶ 9    In petitioner's charge, he generally alleged that SIU engaged in unfair labor practices because it failed to (1) comply with the arbitrator's award relating to his assigned office and laboratory space; (2) retaliated and harassed him for participating in union activities; and (3)

ignored and interfered with the grievances he filed. With respect to the allegation relating to the grievances he filed, he asserted that SIU changed his teaching assignments, he subsequently initiated a "grievance" on September 14, 2016, relating to his "workload assignment," and SIU failed to respond to petitioner.

¶ 10    The executive director of the Board dismissed petitioner's charge. He found that petitioner untimely filed his claim that SIU failed to comply with the terms of the arbitrator's award relating to his office and laboratory space assignment, as it was filed more than six months after he knew or reasonably should have known about SIU's alleged unlawful conduct. The executive director concluded that petitioner's claim that SIU retaliated against him for filing grievances was insufficient, noting that SIU showed it was willing to work with petitioner.

¶ 11    The Board subsequently issued an order, affirming the executive director's decision in part. It affirmed the executive director's conclusion that petitioner untimely filed his claim that SIU did not comply with the arbitrator's award relating to his assigned office and laboratory space, finding that petitioner knew or should have known about SIU's alleged violation before April 7, 2016, which was six months before he filed his October 7, 2016, grievance. The Board noted that petitioner knew by March 18, 2016, the date he filed his initial grievance, that SIU was not going to change his space assignment as a result of the arbitrator's clarification to the award on February 23, 2016.

¶ 12    The Board also affirmed the finding that petitioner did not present sufficient evidence to establish that SIU retaliated against him for participating in union activity. However, with respect to petitioner's assertion that SIU ignored the grievance he initiated on September 14, 2016, the Board stated that there was a "facially plausible legal theory, reasonably based on Sections 10(a)

and 3(b) of the Act, that an employer's failure to process a grievance filed by an individual could interfere with and restrain the employee in the exercise of rights guaranteed under the Act, and thus violate Section 14(a)(1)." The Board directed the executive director to issue a complaint on the issue of whether SIU violated section 14(a)(1) of the Act by "failing to process the grievance."

¶ 13    Thereafter, on behalf of the petitioner, the executive director issued a complaint on November 20, 2017, alleging that SIU violated section 14(a)(1) of the Act. The complaint stated that SIU failed to "process the grievance" filed on September 14, 2016, because petitioner previously filed a grievance in 2014. The Executive Director set the matter for a hearing before an administrative law judge (ALJ).

¶ 14    At the hearing, petitioner testified that from 1996 to 2014, he was an assistant professor in the chemistry department at SIU. In May 2014, SIU terminated his employment. The Union, on behalf of petitioner, filed a grievance against SIU challenging his termination. An arbitrator subsequently ordered SIU to "reinstate" petitioner to his previous position of employment. On September 14, 2016, SIU informed petitioner that it had revised his teaching assignments for the year. Petitioner then filed a "grievance" regarding his "workload assignment" with the dean of the College of Science. SIU did not respond to his request and no informal meeting occurred. Petitioner did not take any steps to ensure the dean received his email request for a meeting and did not advance the grievance to the next level.

¶ 15    David Dilalla, a professor at SIU since 1990, testified that he was appointed associate provost for academic administration in 2012. Dilalla testified that under section 6.02(b) of the CBA, if SIU did not respond to a grievance within the specified time limits, the grievance was

considered denied. Dilalla testified that based on his experience with the grievance procedure, it was the faculty member's responsibility to advance a grievance to the next level.

¶ 16 Following the hearing, the parties filed posttrial memorandums. In petitioner's memorandum, he argued that SIU violated his rights under the Act by failing to respond to his September 14, 2016, request for an informal meeting initiated under section 6.03 of the CBA. He asserted that he did not have any recourse to challenge his action because under the CBA, the informal meeting under section 6.03 was a condition precedent to pursuing a grievance.

¶ 17 In SIU's posttrial memorandum, it argued that under section 6.02 of the CBA, when an employer does not respond to a grievance, it is deemed denied and the grievant shall advance it to the next step in the process.

¶ 18 The ALJ issued an order recommending that petitioner's complaint be dismissed in its entirety. It found that there was no evidence that SIU did not respond to petitioner's September 2016 grievance because he had previously engaged in union activity by filing a grievance in 2014. The ALJ concluded that when SIU did not respond to petitioner's September 2016 grievance, it was considered denied and it was petitioner's responsibility, as the grievant, to advance it to the next level. The ALJ therefore found that petitioner failed to establish that SIU interfered with, or restrained him from, exercising his rights under section 14(a)(1) of the Act.

¶ 19 Petitioner filed objections to the ALJ's order, arguing that the ALJ misinterpreted the procedure for pursing a grievance under the CBA. He continued to assert that under section 6.03 of the CBA, the informal conference was a condition precedent to pursing a grievance and he could not pursue his grievance when SIU failed to respond to his request for an informal meeting.

Petitioner also argued that SIU did not respond to a previous request for seven categories of documents in an email he sent on September 14, 2016.

¶ 20    The Board subsequently issued an opinion and order that affirmed the ALJ's recommended decision and dismissed the complaint. It concluded that petitioner did not show that his filing of a grievance in 2014 was the reason that SIU failed to respond to his September 2016 request for an informal meeting. The Board found that SIU "merely did not respond," but did not take any action to indicate it would not process petitioner's grievance. The Board also found that SIU's failure to respond was not a refusal to process his grievance and that under section 6.02(b) of the CBA and SIU's actual practice, it was the grievant's responsibility to advance a grievance to the next level if SIU did not respond. Thus, SIU did not violate section 14(a)(1) of the Act.

¶ 21    With respect to petitioner's argument that SIU failed to respond to his request for documents, the Board concluded that this claim could not be a basis for a violation of the Act because it was not contained in the complaint. Further, the Board could not consider this issue because the petitioner did not raise it before the ALJ.

¶ 22    On appeal, petitioner first contends that SIU violated section 14(a)(1) of the Act by interfering with his rights when it refused to respond to his "informal grievance" request. He argues that under section 6.03 of the CBA, an informal meeting is a condition precedent to filing a grievance and he was denied the opportunity to advance his grievance to the formal grievance step when SIU did not respond to his request. As previously discussed, the Board concluded that when SIU did not respond to petitioner's request, it was petitioner's responsibility to advance his grievance to the next level. The Board therefore found that petitioner did not violate section 14(a)(1) of the Act.

¶ 23    Under section 16(a) of the Act, a petitioner may seek direct review from the appellate court. 115 ILCS 5/16(a) (West 2010). Review of administrative decisions by the Board is governed by the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 2014)). Our "review extends to all questions of law and fact presented by the record before the court." *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. Our standard of review "depends on whether the issue presented is a question of law, fact, or a mixed question of law and fact." *Id.*

¶ 24    Our review of an agency's conclusion on a question of law is *de novo*. *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2014 IL App (1st) 130285, ¶ 19. However, an administrative agency's findings on questions of fact are deemed *prima facie* true and correct and we will only reverse these findings if they are against the manifest weight of the evidence. *Bloom Township High School District 206 v. Illinois Educational Labor Relations Board*, 312 Ill. App. 3d 943, 953 (2000). This means that we will not reverse the Board's factual findings unless "the opposite conclusion is clearly evident." *Alm v. Lincolnshire Police Pension Board,* 352 Ill. App. 3d 595, 597-98 (2004). We review an administrative agency's decision on a mixed question of law and fact under the clearly erroneous standard. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 26 (2007).

¶ 25    On appeal, the parties do not dispute the Board's factual findings that on September 14, 2016, petitioner requested an informal meeting with SIU under section 6.03 of the CBA, that SIU did not respond to his request, and that petitioner did not follow up or advance the grievance to the next level. The parties dispute the Board's ultimate conclusion that SIU did not violate section 14(a)(1) of the Act when it failed to respond to petitioner's request for an informal meeting.

¶ 26    We find that our review involves a mixed question of law and fact, as we must examine the legal effect on a given set of facts, *i.e.,* whether SIU violated section 14(a)(1) of the Act when it did not answer petitioner's September 14, 2016, request for an informal grievance meeting under section 6.03 of the CBA. See *Jensen v. East Dundee Fire Protection District Firefighters' Pension Fund Board of Trustees*, 362 Ill. App. 3d 197, 202 (2005) (stating that when a case involves "an examination of the legal effect of a given set of facts" it involves a mixed question of law and fact); *Parikh v. Division of Professional Regulation of Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 19 ("[m]ixed questions of fact and law 'are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard,' or to put it another way, whether the rule of law as applied to the established facts is or is not violated") (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). We will therefore apply the clearly erroneous standard. An agency's decision is considered clearly erroneous only when "the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 395 (2001) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

¶ 27    Initially, we note that the Board concluded that petitioner's previous involvement in a protected activity when he filed a grievance in 2014 was not the reason SIU failed to respond to his September 14, 2016, grievance. On appeal, petitioner does not argue that SIU violated section 14(a)(1) on this basis. As such, petitioner has forfeited any argument he may have on this issue. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 28    As previously discussed, petitioner contends that SIU interfered with his rights under the Act and violated section 14(a)(1) when SIU failed to respond to his request for an informal meeting under section 6.03 of the CBA.

¶ 29    Under section 3(b) of the Act, an individual employee, as here, may present grievances to his employer. 115 ILCS 5/3(b) (West 2016). Section 10(c) of the Act provides that the CBA must contain a "grievance resolution procedure," which applies to all employees in the unit. 115 ILCS 5/10(c) (West 2016). Article 6 of the CBA, which is discussed below, governs the grievance procedures applicable here.

¶ 30    As previously stated, section 14(a)(1) of the Act prohibits educational employers from "[i]interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2016). To establish a violation of section 14(a)(1), the charging party need not show the employer acted with an unlawful motive. *General Service Employees Union, Local 73 v. Illinois Educational Labor Relations Board*, 285 Ill. App. 3d 507, 516 (1996). We will find an employer violated section 14(a)(1) when the conduct "may reasonably be said to have a tendency to interfere with the free exercise of employee rights under the Act." *Georgetown-Ridge Farm Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 239 Ill. App. 3d 428, 465-66 (1992). Further, we apply an objective test, *i.e.* "whether the employer's actions would tend to coerce a reasonable employee." *General Service Employees Union, Local 73,* 285 Ill. App. 3d at 516; *Southern Illinois University (Edwardsville)*, 5 PERI ¶ 1077 (IELRB 1989).

¶ 31 We conclude that the Board did not clearly err when it found that SIU did not interfere with his rights or violate section 14(a)(1) by failing to respond to his September 14, 2016, request for an "informal grievance."

¶ 32 The Board made the factual finding that SIU "did not take any action indicating that it would not process [petitioner's] grievance, but merely did not respond." From our review of the record, the Board's finding is not against the manifest weight of the evidence. The evidence shows that SIU did not answer petitioner's September 14, 2016, request for an "informal meeting," but there is no evidence that SIU engaged in any actions to indicate to petitioner that it would completely refuse to process his grievance had he followed up with his request for a meeting or advanced his grievance to the next level. But see *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 409 (1988) (an employer's refusal to submit a grievance to arbitration has been held to be a violation of section 14(a)(1)). Rather, the Board concluded that under the CBA, when SIU did not respond to petitioner's request for a meeting, it was petitioner's responsibility to advance the grievance. We cannot find that this conclusion is clearly erroneous.

¶ 33 Section 6.02(b) of the CBA, which is entitled "Time Limits," provides that "[i]f [SIU] does not answer a grievance within the specified time limits or any agreed extension thereof, the grievance may be considered to be denied at that level and immediately moved to the next level." Thus, when SIU did not respond to petitioner's September 14, 2016, request for an informal meeting, his request was considered denied. Further, section 6.04(a), which is entitled "Formal Grievance Procedure," states that "[i]f a settlement cannot be reached through the informal process provided in Section 6.03, *the Faculty member(s) may file* a formal grievance at the administrative

level immediately above the level at which the action occurred that gave rise to the grievance." (Emphasis added.) When SIU did not respond to petitioner's request for an informal meeting, he could have initiated the formal grievance process set forth in section 6.04. Accordingly, given that petitioner's request for an informal grievance meeting was considered denied when SIU did not answer it and that petitioner could have advanced his grievance to the next step, the evidence did not establish that SIU interfered with or restrained petitioner's rights under the Act by failing to respond to his request. The Board's conclusion that SIU did not violate section 14(a)(1) of the Act was not clearly erroneous.

¶ 34     Petitioner nevertheless argues that subsection 6.02(b) of the CBA does not apply to his request for an informal grievance meeting made under section 6.03 because it only applies to a formal "grievance" initiated under section 6.04.

¶ 35     We note that "[c]ollective bargaining agreements are contracts and, as such, generally are interpreted according to principles of contract law." *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 975 (1993). If a contract is unambiguous, it is to be construed according to the plain meaning of its language. *Id.*

¶ 36     Article 6 of the CBA is entitled "Grievance Procedure" and contains the procedure for the informal meeting process set forth in section 6.03 as well as the formal grievance procedure provided in section 6.04. Subsection 6.02(b), entitled "Time Limits" does not state that the provisions contained in that subsection only apply to section 6.04 or that they do not apply to section 6.03.

¶ 37     Further, subsection 6.02(b) states that a "grievance" is considered denied if SIU does not answer the grievance, but it does not distinguish a "grievance" initiated under the informal meeting

process in section 6.03 from one initiated under the "formal" grievance process in section 6.04. Both sections 6.03 and 6.04 specifically refer to the faculty member's dispute initiated under the informal meeting process in section 6.03 as a "grievance." Second 6.03 states that, before filing a grievance under the formal grievance procedure in section 6.04, the faculty member "shall, in writing, request an informal meeting *** no later than thirty (30) calendar days after the date the Faculty member(s) *** could have obtained knowledge of the first occurrence of the event giving rise to the *grievance*." (Emphasis added.) Likewise, section 6.04 states that, "[i]n the event the *grievance* is not resolved through the informal process, the parties agree to the following governing principles for the filing and process of formal grievances." (Emphasis added.) Based on the plain meaning of the CBA, we are unpersuaded by defendant's argument that subsection 6.02(b) only applies to grievances initiated under section 6.04 and not to requests for informal grievance meetings initiated under section 6.03.

¶ 38    Petitioner next contends that SIU interfered with his rights to pursue his grievance because it refused to provide him with certain documents he requested in the September 14, 2016, email request, which would have enabled him to pursue his grievance if the informal meeting was unsuccessful.

¶ 39    Under section 6.09 of the CBA, either party may request information that is "reasonably needed to process or respond to a grievance" and the party to whom the request was made shall respond in writing within 10 days. In the Board's order, it determined that petitioner's claim that SIU interfered with his rights by failing to respond to his request for documents was forfeited because he did not raise the issue in the complaint or before the ALJ.

¶ 40    Under the Act, an individual may file an unfair labor practice charge against an employer. 115 ILCS 5/15 (West 2016). If the Executive Director determines that the charge states an issue of law or fact, it shall issue a complaint "which fully states the charges." *Id.*; 80 Ill. Adm. Code 1120.30(a). A charging party may seek to amend the complaint based on newly discovered evidence, inadvertent exclusions, and new allegations. See 80 Ill. Adm. Code 1105.100(g). When a charging party does not include a claim in the complaint, it is considered forfeited. See *Fraternal Order of Police, Chicago Lodge No. 7 v. Illinois Labor Relations Board,* 2011 IL App (1st) 103215, ¶ 30; *American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. State Labor Relations Board*, 196 Ill. App. 3d 238, 251-52 (1990).

¶ 41    Here, in petitioner's unfair labor practice charge, he did not allege that he requested documents from SIU in his September 14, 2016, email request for a meeting or that SIU interfered with his rights by failing to provide him with these documents. The executive director's complaint also did not allege that SIU interfered with his rights by failing to respond to petitioner's request for documents under section 6.09. Petitioner did not request to amend the complaint to include this claim. Because petitioner's claim that SIU interfered with his rights by failing to respond to his request for documents was not included in the complaint, it is forfeited. See *Fraternal Order of Police, Chicago Lodge No. 7*, 2011 IL App (1st) 103215, ¶ 30 (finding that the board did not clearly error in finding that the charging party forfeited a claim that was not included in the initial charge or complaint for hearing filed by the executive director of the Board).

¶ 42    Moreover, petitioner's claim is also forfeited because he did not raise it before the ALJ. See *Smith v. Department of Professional Regulation,* 202 Ill. App. 3d 279, 287 (1990) ("[t]he waiver rule specifically requires first raising an issue before the administrative tribunal rendering

a decision from which an appeal is taken to the courts."). We note that petitioner asserts generally that he "raised section 6.09" in his post-hearing brief. However, the record shows that petitioner merely recited that provision in his brief and did not assert any argument on the issue.

¶ 43    Finally, petitioner contends that the Board improperly determined that his claim that SIU failed to comply with arbitrator's award relating to his laboratory and office space assignment was barred by the statute of limitations.

¶ 44    Section 15 of the Act states that "[n]o order shall be issued upon an unfair practice occurring more than 6 months before the filing of the charge alleging the unfair labor practice." 115 ILCS 5/15 (West 2016). Under this section, the Board does not have jurisdiction for alleged unfair practice charges that occurred more than six months before the party filed the charge. *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d 612, 619-20 (1995). The six-month period for filing the charges begins to run when the party became aware, or should have become aware, of the alleged actions that violate the Act. *Id.* The six-month time period begins to run "even if the charging party does not know the legal significance of the acts which constitute the alleged unfair labor practice." *Id.*

¶ 45    Here, petitioner filed his unfair labor practice charge on October 7, 2016, alleging that SIU failed to comply with the arbitrator's award relating to his assigned office space. The Board found that petitioner did not timely file his claim because he filed it more than six months after the date, he knew about SIU's alleged violation. The Board stated that petitioner knew by March 18, 2016, the date he filed his initial grievance, that SIU was not going to change his assigned space as a result of the arbitrator's February 23, 2016, clarification letter. It therefore concluded that he should have known before April 7, 2016, which was six months before he filed his October 7,

2016, charge, that SIU was not going to comply with any alleged obligation under the arbitrator's clarification of the award relating to office space. From our review, we cannot find that the Board's factual finding was against the manifest weight of the evidence.

¶ 46    The record shows that on February 21, 2016, SIU made its "final office and lab space assignment" and despite petitioner's requests to be assigned the same office space that he previously occupied, SIU assigned him alternate space. On February 23, 2016, the arbitrator clarified that SIU was not required to assign petitioner the space he had previously occupied. On February 24, 2016, petitioner emailed SIU, stating that it had assigned him alternate space "despite my pleas that any alternate space other than what I had previously would irreversibly and irreparably harm my research prospects, potential and productivity." On March 18, 2016, petitioner emailed SIU requesting a meeting because SIU "denie[d] me access to the lab space I have had for the past two decades." Based on this record, petitioner knew, or should have known, by at least March 18, 2016, that SIU had made its final decision relating to his office space, that SIU was not going to assign him the space he had previously occupied despite his "pleas," and that the arbitrator's award did not require SIU to do so. Accordingly, the Board's factual finding that petitioner should have known before April 7, 2016, which was more than six months before he filed his October 7, 2016, charge that SIU was not going to comply with any alleged obligation under the arbitrator's award relating to his assigned space, was supported by the record and not against the manifest weight of the evidence.

¶ 47    Petitioner asserts that the six-month period began to run on April 21, 2016, when SIU denied his informal grievance relating to the assigned office space. However, petitioner could not extend the six-month period by repeatedly renewing his request to be assigned the space he had

previously occupied. See *Jones*, 272 Ill. App. 3d at 620 (concluding that petitioner could not extend the six-month period "merely by repeated renewal of his request once it was denied"). As previously discussed, petitioner knew by at least March 18, 2016, that SIU was not going to assign him his old space despite his repeated requests and that the arbitrator did not require SIU to do so. We are therefore unpersuaded by petitioner's argument that he did not know until April 21, 2016, when SIU denied his informal grievance, that SIU was not going to comply with any alleged obligation it had under the arbitrator's award relating to his assigned space.

¶ 48    Accordingly, because petitioner filed his October 7, 2016, claim that SIU failed to comply with the arbitrator's award relating to office space more than six months after he became aware, or should have become aware, of the alleged unfair labor practice violation, the Board correctly concluded that it did not have jurisdiction to review his claim.

¶ 49    For the reasons explained above, we affirm the Board's decision.

¶ 50    Board decision affirmed. (Administrative review direct to the appellate court.)