2020 IL App (1st) 190148-U

SIXTH DIVISION
February 21, 2020

No. 1-19-0148

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| BAKUL DAVÉ, | ) Petition for Review of an Order |
| | ) of the Illinois Educational Labor |
| Petitioner-Appellant, | ) Relations Board. |
| | ) |
| v. | ) Nos. 18 CA 0005-C |
| | ) 18 CA 0039-C |
| STATE OF ILLINOIS EDUCATIONAL LABOR | ) |
| RELATIONS BOARD and BOARD OF TRUSTEES OF | ) |
| SOUTHERN ILLINOIS UNIVERSITY, | ) |
| | ) |
| Respondents-Appellees. | ) |

_____

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The Illinois Educational Labor Relations Board's order dismissing petitioner's charges alleging that the Board of Trustees of Southern Illinois University violated sections 14(a)(1), (3), (4), and (8) of the Illinois Educational Labor Relations Board Act is affirmed.

¶ 2    Petitioner, Bakul Davé, a professor at Southern Illinois University, was placed on unpaid administrative leave and subsequently terminated from his position at Southern Illinois University. Thereafter, in July 2017 and November 2017, he filed two unfair labor practice charges against

respondent, the Board of Trustees of Southern Illinois University (SIU) alleging that SIU violated sections 14(a)(1), (3), (4), and (8) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a) (West 2016)) when it placed him on unpaid administrative leave (2018-CA-0005-C) and terminated him (2018-CA-0039-C). The executive director of respondent, the State of Illinois Educational Labor Relations Board (Board), consolidated petitioner's charges and subsequently dismissed them. The Board affirmed. Petitioner appeals that decision. We affirm.

¶ 3    Initially, we note that in October 2016, petitioner submitted an unfair labor practice charge against SIU alleging that the Board violated section 14(a) of the Act. The Board dismissed the charge and we affirmed in *Davé v. State of Illinois Educational Labor Relations Board,* 2019 IL App (1st) 182442-U.

¶ 4    The following facts are taken from the common law record, which includes exhibits that petitioner and SIU submitted to the Board. These exhibits contain emails exchanged between petitioner, petitioner's union representative, SIU faculty members, and certain SIU officials, including SIU's senior associate general counsel, the associate provost for academic administration, and the interim provost.

¶ 5                                    I. Background

¶ 6    Petitioner was a faculty member in the chemistry department at SIU since 1996. In May 2014, SIU terminated petitioner's employment, after which the Southern Illinois University Carbondale Faculty Association, IEA-NEA (Union) filed a grievance against SIU challenging the termination. Following arbitration, an arbitrator concluded that SIU should reinstate petitioner to his former position. When petitioner returned to work in the spring 2016 semester, SIU assigned him office and laboratory space as well as course assignments for the following academic year.

A. Office and Laboratory Space

¶ 7      Upon petitioner's return to work in January and February 2016, he requested that SIU assign him the same office and laboratory space that he had occupied before his termination. However, petitioner's previous space was occupied by other faculty members. SIU asked these faculty members if they would voluntarily move from that space, but they did not want to do so. SIU offered petitioner three other options for his laboratory and office space. Petitioner did not select any of the options, so SIU assigned him space. Pursuant to petitioner's request to reconsider his office space, on February 21, 2016, SIU reconsidered his space assignment request and concluded it was not going to assign him the same space he had occupied before his termination.

¶ 8      On February 23, 2016, the arbitrator issued a clarification letter, concluding that SIU was not required to assign petitioner the exact same space that he had previously occupied before his discharge. Petitioner continued to assert that his assigned office space was inadequate. In March and April 2016, he told SIU that he had been experiencing health issues in his assigned space. In response, on April 13, 2016, SIU's associate general counsel had the Center for Environmental Health and Safety (CEHS) investigate petitioner's assigned space. The CEHS investigation found no concerns with his space and recommended to slightly adjust the ventilation system for humidity and clean the air grills.

¶ 9      On March 18, 2016, petitioner requested an informal grievance meeting with SIU concerning his "forced displacement from my office and research labs that denies me access to the lab space I have had for the past two decades." In April 2016, SIU denied petitioner's grievance.

¶ 10     In May 2016, SIU provided petitioner a "Request for Accommodation" form for him to request an accommodation and informed him that he should submit the form along with physician

documentation. According to the affidavit of SIU's associate general counsel attached to SIU's position statement submitted to the Board, petitioner did not submit the form, or any physician notes to SIU, before September 1, 2017.

¶ 11 On May 18, 2016, petitioner informed SIU that he had "not yet been provided the requisite space suitable for my research needs that is necessary for the conduct of my work as per the arbitrator's order." That same day, petitioner's union representative told SIU in an email that petitioner continued to "raise a number of arguments as to why he should be reassigned back to his former office and lab space" and that "[w]e have advised him we believe that issue was resolved fully and finally by the Arbitrator, an answer he refuses to accept and, which limits our ability to assist him or advocate for him on this and other related issues."

¶ 12 On August 16, 2016, petitioner told SIU in an email that he had "not been provided the requisite space needed for the conduct of my work as per the arbitrator's order" and "[b]ecause of the harm, damage, and injury to my health my doctors have advised me against exposure to harmful environment."

B. Teaching Assignments

¶ 13 On April 29, 2016, petitioner requested the chair of the department of chemistry and biochemistry, Gary Kinsel, to assign him to teach a course in inorganic chemistry, but Kinsel assigned him other chemistry courses. The "workload assignment" signed by the department chair that day showed that SIU assigned petitioner to teach Chemistry 579 in the fall of 2016 and Chemistry 106 in the spring of 2017. Petitioner did not sign the form. According to various documents in the record, petitioner informed the chair that the union wanted to review the form before he signed it. According to petitioner's statement attached to his unfair labor practice charge

in case No. 2018-CA-0039-C, Kinsel told him that "it was his policy to give preference to young faculty in coursework assignment" and that petitioner's "assignment was handled as a special case" because he had "filed complaints."

¶ 14    At the beginning of the fall 2016 semester, the new chair of the department of chemistry and biochemistry, Lichang Wang, contacted petitioner to discuss the upcoming semester and informed him that she was "interested in learning from you what I can help as chair to advance your career and what actions you would suggest for chair to take in order to advance our department." Petitioner subsequently told Wang that he could not teach Chemistry 579 without his notes, syllabus, lecture slides, books, and journal articles, which had been in his old office. Wang told petitioner that all his materials had been returned to him, that she had obtained class notes from a student who took another chemistry course that he had taught, and that she was working to obtain Chemistry 579 materials from former students who had taken that course. On August 30, 2016, SIU cancelled Chemistry 579 for the semester because there were only two students registered.

¶ 15    On September 14, 2016, Wang notified petitioner that SIU had modified his "workload assignment," such that he would not be teaching any courses in the fall of 2016 and was assigned to teach Chemistry 106 and Chemistry 579 in the spring of 2017. That same day, petitioner requested an informal grievance meeting with SIU regarding his "workload assignments." He also requested copies of communications sent by various parties at SIU regarding his "workload assignment" and documents related to other faculty members' assignments. SIU did not respond to his informal grievance or request for documents. Thereafter, on October 7, 2016, petitioner filed

an unfair labor practice charge with the Board. The Board dismissed his charge, and, on appeal, we affirmed. *Davé,* 2019 IL App (1st) 182442-U, ¶ 49.

¶ 16    On January 13, 2017, petitioner informed Wang in an email that he had asked to teach inorganic chemistry but was not assigned that course. He stated that he had "not been provided anything to be able to perform my duties" and he "would not be in a position to be able to teach." Then, on January 17, 2017, petitioner informed Wang that he had sent a formal notification on January 13, 2017, stating that he was not able to teach because he had not been provided resources. The next day, petitioner did not show up to teach the first day of his assigned courses.

¶ 17    SIU informed petitioner on January 19, 2017, that it had received notice that he had refused to perform his assigned teaching duties and had failed to appear for the first scheduled sessions of his assigned courses. SIU told him that, based on his refusal to teach, SIU was starting the investigation process to determine whether to take disciplinary action and that, under the terms of the Collective Bargaining Agreement, it was placing him on administrative leave without prior notice. The next day, SIU informed petitioner that it was conducting an investigatory interview about the allegations that he refused to teach the courses assigned to him.

¶ 18    In March 2017, SIU issued its Investigatory Report, in which it concluded that petitioner was assigned to teach Chemistry 106 and Chemistry 579 in the spring of 2017, petitioner knew about that assignment, and petitioner did not perform his assigned duties. The report noted that petitioner alleged that he could not teach the course unless his previous course materials were returned to him. The report stated that petitioner previously taught Chemistry 579, the department chair made efforts to obtain his previous course materials for this course, he was competent and qualified to "re-develop" and teach the course, and he had sufficient time to do so. The report

stated that Chemistry 106 was a chemistry course for non-science majors, that petitioner was competent and qualified to teach such a course, and that he had been offered previously developed materials for this course.

¶ 19    Following a disciplinary meeting, SIU officials recommended to SIU's interim provost that petitioner be discharged. In June 2017, the interim provost informed petitioner that she concurred with the recommendation and that he was being dismissed from his faculty position for failure to perform his assigned duties. Petitioner pursued a formal grievance relating to his termination and SIU denied his request.

C. Unfair Labor Practice Charges

¶ 20    On July 19, 2017, petitioner filed an unfair labor practice charge with the Board, alleging that SIU violated sections 14(a)(1), (3), (4), and (8). Under section 14(a)(1) of the Act, educational employers are prohibited from "[i]interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2016). Sections 14(a)(3) and (a)(4) prohibit educational employers from, respectively, "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization" and "[d]ischarging or otherwise discriminating against an employee because he or she has signed or filed an affidavit, authorization card, petition or complaint or given any information or testimony under this Act." 115 ILCS 5/14(a)(3), (4) (West 2016). Section 14(a)(8) prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(8) (West 2016). Petitioner asserted, *inter alia*, that he was denied the necessary resources as mandated by the arbitration award, which prevented him from performing his duties, and that he was placed on unpaid administrative leave

as an act of retaliation for participating in protected activities. On November 22, 2017, petitioner filed another unfair labor practice charge with the Board, similarly alleging that SIU violated sections 14(a)(1), (3), (4), and (8). He asserted, *inter alia*, that he was terminated from his position based on retaliatory motives. The Board consolidated the charges because they had a common set of facts.

¶ 21    Following an investigation under section 15 of the Act (115 ILCS 5/15 (West 2016)), the executive director issued a Recommended Decision and Order (EDRDO), recommending a dismissal of the charges and concluding that petitioner failed to show that SIU violated the Act. The executive director found that the evidence did not demonstrate that SIU violated sections 14(a)(1) and (a)(3), as it did not show that SIU placed petitioner on administrative leave or terminated him in retaliation for his involvement in a protected activity. The executive director found that the investigation showed that petitioner was placed on unpaid administrative leave pending allegations that he refused to perform his workload assignments, which resulted in his termination.

¶ 22    With respect to petitioner's allegation that SIU violated section 14(a)(4), the executive director concluded that petitioner did not present evidence that established a causal connection between SIU's decisions to place him on administrative leave and terminate him and his previously filed unfair labor practice charge. As to petitioner's claim that SIU violated section 14(a)(8) when it denied him necessary resources as mandated by the arbitrator's award, the executive director concluded that the Board had already dismissed this claim for being untimely and that, therefore, his claim was barred by collateral estoppel.

¶ 23    Petitioner filed exceptions to the executive director's decision, arguing, *inter alia*, that the executive director relied on false information provided by SIU. The Board affirmed the executive director's recommended decision to dismiss the charges, noting that the executive director dismissed petitioner's charges because he failed to provide any evidence of a causal connection between his suspension and termination and his grievance filings, unfair labor practices charge, or any other protected activity in which he may have participated. The Board concluded that petitioner's claim that SIU violated the Act by failing to comply with the arbitrator's award was untimely. In doing so, it noted that petitioner emailed SIU on August 16, 2016, stating that he had not been provided the requisite space needed to conduct his work pursuant to the arbitrator's award. The Board therefore concluded that petitioner knew of SIU's alleged refusal to comply with the arbitrator's award by August 16, 2016, which was more than six months before he filed the July 2017 and November 2017 charges.

## II. Analysis

¶ 24    On appeal, petitioner contends that the Board erred when it dismissed his charges without holding an evidentiary hearing. Petitioner also argues that the Board erred when it found that his claim that SIU violated the Act by failing to comply with the arbitrator's award was untimely.

¶ 25    Under section 16(a) of the Act, a petitioner, as here, may seek direct review from the appellate court. 115 ILCS 5/16(a) (West 2016). The Administrative Review Law governs review of administrative decisions by the Board. 735 ILCS 5/3-101 *et seq.* (West 2016). We review "all questions of law and fact presented by the record before the court." *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14.

¶ 26    Under the Act, an individual may file an unfair labor practice charge with the Board against an employer. 115 ILCS 5/15 (West 2016). The executive director of the Board has the authority to investigate charges and issue complaints. 80 Ill. Adm. Code 1120.30(a). The party filing the charge must submit "all evidence relevant to or in support of the charge." 80 Ill. Adm. Code 1120.30(b)(1). If "the Executive Director concludes that the investigation has established that there is *an issue of law or fact* sufficient to warrant a hearing, he or she shall issue a complaint." (Emphasis in original.) 80 Ill. Adm. Code 1120.30(b)(5); 115 ILCS 5/15 (West 2016). However, the executive director shall dismiss a charge if the investigation shows that there was no issue of law or fact "sufficient to warrant a hearing." 80 Ill. Adm. Code 1120.30(b)(6). The charging party may file exceptions to the executive director's decision and, when reviewing the exceptions, the Board must determine whether the decision is consistent with the Act and the Unfair Labor Practice Proceedings of the Illinois Administrative Code. 80 Ill. Adm. Code 1120.30(c).

¶ 27    It is within the Board's sound discretion to dismiss an unfair labor practice charge. *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 45. When the Board determines there is not enough evidence and dismisses a charge, on review, we must determine whether the Board abused its discretion. *Michels*, 2012 IL App (4th) 110612, ¶ 45. The Board abuses its discretion only when its decision is "clearly illogical" or when it is "arbitrary and reached without employing conscientious judgment." *Id.* ¶¶ 45-46. On appeal, it is not enough for a petitioner to make a "plausible argument." *Id.* ¶ 46. Rather, a petitioner must "establish that no reasonable person could possibly take the Board's view." *Id.* Even if we would have reached a different

conclusion than the Board, that is not enough, by itself, to justify reversing the Board's decision. *Id.* ¶ 45.

¶ 28    As previously discussed, petitioner asserts that the Board erred when it dismissed his claims that SIU violated sections 14(a)(1), (a)(3), and (a)(4) of the Act when it placed him on administrative leave and terminated him.

¶ 29    Section 14(a)(1) relates "to adverse action taken against an employee as a result of any protected concerted activity" and section 14(a)(3) pertains to "discrimination based on union activity." *Speed District 802 v. Warning,* 242 Ill. 2d 92, 112 (2011). When alleged violations of sections 14(a)(1) and 14(a)(3) are based on the same conduct, as here, section 14(a)(1) is considered a "derivative" of a violation of section 14(a)(3) and the section 14(a)(3) test is applied. *Speed District 802,* 242 Ill. 2d at 112-13. To establish that an employer violated section 14(a)(3), the evidence must show that the charging party engaged in activity protected by section 14(a)(3), the employer was aware of that activity, and the charging party was discharged for engaging in that activity. *Board of Education, City of Peoria School District No. 150 v. State of Illinois Educational Labor Relations Board*, 318 Ill. App. 3d 144, 150 (2000). With respect to section (a)(4), the charging party must show that he used or participated in the Board's processes, the employer was aware of those actions, and the employer discharged him in part because of that activity. *Board of Education, City of Peoria School District. No. 150*, 318 Ill. App. 3d at 150. Accordingly, under sections (a)(1), (a)(3), and (a)(4), petitioner must show that SIU placed him on unpaid administrative leave and terminated him because he engaged in activity protected by the Act.

¶ 30    Here, the parties do not dispute that petitioner engaged in protected activities covered by the Act or that SIU was aware of his activities, which included challenging his termination in 2014, filing an unfair labor practice charge in 2014, and submitting grievances with SIU regarding his space assignment and workload. Thus, the only element at issue is whether SIU discharged petitioner because he engaged in protected activities.

¶ 31    To establish that an employer discharged an employee for engaging in a protected activity, a petitioner must show that his protected activity "was a substantial or motivating factor" for the termination or other disciplinary action. *Speed District 802*, 242 Ill. 2d at 113. An employer's motive for retaliating based on union activity may be inferred from several factors, including "an employer's expressed hostility towards unionization, together with knowledge of the employee's union activities," proximity in time between the employee's union activity and the employer's adverse employment action, disparate treatment of employees, a pattern of conduct that targets union supporters, inconsistencies between the employer's reason for the employment decision and other actions of the employer, and any inconsistent explanations for the employment decision. *City of Burbank v. Illinois State Labor Relations Board,* 128 Ill. 2d 335, 346 (1989). The proximity in time between the employee's protected activity and the employer's adverse employment action is insufficient, by itself, to find the employer acted with retaliatory motive. *Community Unit School District No. 5 v. Illinois Educational Labor Relations Board,* 2014 IL App (4th) 130294, ¶ 64.

¶ 32    Here, petitioner has not established that the Board abused its discretion when it dismissed his charges without directing the executive director to issue a complaint or holding a hearing. The record shows that SIU placed him on administrative leave and terminated him because he failed to

perform his assigned teaching duties in the spring of 2017, not because he engaged in any protected activities.

¶ 33    The record shows that petitioner knew about his teaching assignments for the spring of 2017 — Chemistry 106 and Chemistry 579 — and that he failed to perform his duties. The record shows that petitioner knew in spring 2016 that he was assigned to teach Chemistry 106 in spring 2017, as he acknowledged in his statement attached to his unfair labor practice charge in case No. 2018-CA-0039-C. In that statement, he stated that he knew about this assignment on April 29, 2016, when the department chair rejected his request to teach inorganic chemistry and assigned him Chemistry 106 instead. With respect to Chemistry 579, although petitioner asserted that he was told only a few days before the start of the fall 2016 semester that he was assigned to teach this course that semester, SIU ultimately cancelled the course for the semester on August 30, 2016. As a result, on September 14, 2016, SIU notified petitioner that his workload assignment had been modified such that he was not assigned to teach any courses in the fall of 2016 and was assigned to teach Chemistry 579 in the spring of 2017. Despite knowing that he was assigned to teach these courses in the spring of 2017, on January 18, 2017, the first day of classes for that semester, petitioner did not show up to teach his assigned courses. Thereafter, SIU initiated disciplinary action against him, which resulted in placing him on administrative leave and terminating him, for his failure to appear for and teach his assigned courses.

¶ 34    There is nothing in the record to show that SIU placed petitioner on unpaid administrative leave or terminated him due to anything other than his refusal to appear for and teach his assigned courses. There is nothing in the record that demonstrates the existence of any factors in which the Board could have inferred that SIU terminated him or placed him on administrative leave because

he had previously engaged in protected activity, such as any evidence to infer that SIU expressed hostility towards unionization, engaged in disparate treatment of employees, demonstrated a pattern of conduct that targeted union supporters, that SIU changed its explanation for its decisions, or that there were any inconsistencies between SIU's reason for its decisions and other actions it took.

¶ 35    Although the email communications contained in the record show that petitioner did not request to teach the courses to which he was assigned, there is nothing in the record from which the Board could have inferred that SIU assigned him to teach these courses as a result of his participation in any activity protected by the Act. Rather, the record shows that another faculty member was assigned to teach the inorganic chemistry course he requested. Further, an email from the department chair to SIU's associate general counsel on August 28, 2016, supports that SIU's course assignments were not connected to his participation in protected activities, as she stated that she informed petitioner that the department could not let him teach his requested course "unless the current faculty who teaches these classes does not want to teach them or get tenure and promoted. [Petitioner] agreed."

¶ 36    Petitioner asserts that SIU assigned him courses he was not capable of teaching and was not provided adequate laboratory space or materials necessary for him to teach. He argues that the executive director ignored these facts when finding that SIU was justified in terminating him. The record does not support petitioner's assertions.

¶ 37    With respect to his course assignments, petitioner took issue with the fact that SIU assigned him Chemistry 106, a course he had not previously taught, and Chemistry 579, a course in which he previously taught but claimed he could not teach without his previous instructional materials

that were not returned to him from his old office. However, the record shows that SIU gave petitioner, who had been a faculty member since 1996, time to prepare for the courses and attempted to help him obtain the necessary materials. With respect to Chemistry 106, petitioner knew in April 2016 that he was assigned to teach this course for non-science majors in the spring of 2017, thus providing him about nine months to prepare and obtain the necessary materials. With respect to chemistry 579, it was cancelled for the fall 2016 semester, which provided him additional time to prepare for teaching the course the following semester. In fact, the department chair expressed to school officials in an August 29, 2016, email that cancelling Chemistry 579 for the fall 2016 semester would give petitioner "time to recreate all teaching materials." Further, the email communications in the record show that the department chair attempted to help petitioner obtain materials for his assigned courses, as she indicated she was gathering notes from students who had previously taken his course and was seeking materials from other faculty members. Accordingly, we are unpersuaded by petitioner's assertion that the executive director ignored facts that showed that SIU set him up to fail when he returned to work in early 2016 because it assigned him courses he was not capable of teaching and did not provide him the materials that were necessary for him to teach.

¶ 38    With respect to petitioner's assigned office and laboratory space, the record shows that when petitioner returned to work in January and February of 2016, he was not satisfied with the space that SIU assigned him, as he wanted the space that he had previously occupied. However, the arbitrator's award did not require SIU to assign him the exact same space that he had previously occupied and there is nothing in the record to show that SIU assigned him other space because he had engaged in protected activity. Rather, the record shows that SIU offered petitioner three other

options because there were other faculty members in his old space. Further, after petitioner complained that his assigned space was causing him health problems, SIU had the Center for Environmental Health & Safety investigate the space for any potential health issues. The investigation showed that there were no issues with his space. However, petitioner continued to assert that his assigned space was inadequate, so SIU sent petitioner a "Request for Accommodation" form. According to SIU's affidavit submitted to the Board, Petitioner did not complete the form until after his termination on September 1, 2017. Thus, we are unpersuaded by petitioner's assertion that the executive director ignored facts that showed that SIU set him up to fail when it assigned him inadequate space upon returning to work after the successful arbitration in 2015.

¶ 39    Accordingly, based on this record, we cannot find that the Board's decision affirming the executive director's conclusion that there was no evidence of a causal connection between SIU's decisions to place him on administrative leave and terminate him and his participation in any protected activities was clearly illogical, arbitrary, or that no reasonable person could possibly take its view. The Board therefore did not abuse its discretion in dismissing petitioner's charges alleging that SIU violated sections 14(a)(1), (a)(3), and (a)(4) of the Act.

¶ 40    Petitioner claims that, under the Act, the Board was required to issue a complaint and hold an evidentiary hearing because SIU's motives for its decisions to place him on administrative leave and terminate him were questions of fact. An employer's motive is generally a question of fact. *Speed District,* 802, 242 Ill. 2d at 113. However, as previously stated, under the Act, the executive director is only required to issue a complaint if the investigation established that there was an "*issue of law or fact* sufficient to warrant a hearing" and shall dismiss a charge if the investigation

showed that there was "not an issue of law or fact sufficient to warrant a hearing." (Emphasis in original.) 80 Ill. Adm. Code 1120.30(b)(5), (6); 115 ILCS 5/15 (West 2016). When "determining whether the issues of law or fact are sufficient to warrant a hearing," the executive director "shall consider whether the charge states a cause of action upon which relief can be granted under the Act and whether the facts provided in the course of the investigation state a prima facie case." 80 Ill. Adm. Code 1120.30(b)(5).

¶ 41     Here, the executive director dismissed the charges and concluded that petitioner failed to provide any evidence of a causal connection between SIU's decisions to suspend and terminate him and any protected activity in which he participated. Thus, the executive director was not required to issue a complaint, as it was only required to do so if there was "*an issue of law or fact* sufficient to warrant a hearing." Further, it was within the Board's discretion to dismiss petitioner's charges if there was insufficient evidence. *Michels*, 2012 IL App (4th) 110612, ¶ 45. As previously discussed, based on the record, we cannot find that the Board abused its discretion in dismissing petitioner's charges or that its decision was clearly illogical.

¶ 42     Petitioner next asserts that the Board erred when it found that his claims that SIU violated section 14(a)(8) of the Act by failing to comply with the arbitrator's award were untimely because they were filed more than six months after he knew that SIU was allegedly not going to comply with the arbitrator's award. Section 15 of the Act states that "[n]o order shall be issued upon an unfair practice occurring more than 6 months before the filing of the charge alleging the unfair labor practice." 115 ILCS 5/15 (West 2016). Under this section, if a party files the unfair labor practice charge more than six months after the alleged unfair practice violation occurred, the Board does not have jurisdiction. *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d

612, 619-20 (1995). The six-month period begins to run when the charging party became aware, or should have become aware, of the employer's alleged actions that violated the Act and begins "even if the charging party does not know the legal significance of the acts which constitute the alleged unfair labor practice." *Jones,* 272 Ill. App. 3d 612, 619-20 (1995)*.*

¶ 43     An administrative agency's findings and conclusions on questions of fact are considered *prima facie* true and correct and we will only reverse these findings if they are against the manifest weight of the evidence. *Wilson v. Municipal Officers Electoral Board for City of Calumet City,* 2013 IL App (1st) 130957, ¶ 10. Under this standard, we will not reverse the Board's factual findings unless "the opposite conclusion is clearly evident." *Alm v. Lincolnshire Police Pension Board,* 352 Ill. App. 3d 595, 597-98 (2004). Here, the Board made a factual finding when it concluded that petitioner knew more than six months before he filed his charge that SIU was not going to comply with the obligations he believed it had under the arbitrator's award regarding his space.

¶ 44     Petitioner filed his unfair labor practice charges on July 19, 2017, and November 22, 2017. He alleged in both charges that SIU violated section 14(a)(8), which prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(8) (West 2016). The Board found that petitioner knew of SIU's alleged refusal to comply with the arbitrator's award by August 16, 2016, as he emailed SIU's associate counsel on this date informing her that SIU had not provided him "the requisite space needed for the conduct of my work as per the arbitrator's order." The Board found that his claims were untimely because he filed his charges in July 19, 2017, and November 2017, which was more than one year after he knew that SIU was not going to comply with the obligations petitioner believed it had under the

arbitrator's award. We cannot find that the Board's factual finding that petitioner should have known by the date of the August 16, 2016, email that SIU was not going to assign him the space he believed it was required to provide him under the arbitrator's award, was against the manifest weight of the evidence. Thus, because petitioner filed his claims more than six months after he knew about SIU's alleged violation, the Board correctly concluded that petitioner's claims alleging that SIU violated the Act by failing to comply with the terms of the arbitrator's award were untimely.

¶ 45    Further, petitioner does not claim on appeal that he did not have knowledge of SIU's alleged refusal to comply with the terms of the arbitrator's award by August 16, 2016. He however asserts that the six-month "statute of limitations" time period applies when an employee is harmed by a single overt act and that, if there is a continuing violation by the employer, the "limitations" period is tolled until the violation ceases. He asserts that the six-month period was tolled here because SIU continued to ignore the arbitrator's ruling relating to his space assignment. He argues therefore that the Board improperly dismissed his section 14(a)(8) claims for being untimely.

¶ 46    Under the continuing violation rule, when "a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 199 Ill. 2d 325, 345 (2002). However, "[a] continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). Thus, when "there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier*, 207 Ill. 2d at 278.

¶ 47 The continuing violations period does not apply here because SIU engaged in one overt act, *i.e.,* assigning him space, from which petitioner continued to express dissatisfaction even after the arbitrator clarified SIU did not have to assign him to the exact same space he had previously occupied. The record shows that, on February 21, 2016, after reconsidering petitioner's space assignment, SIU made its final decision regarding his assigned space. Thus, even though petitioner continued to assert his dissatisfaction with his assigned space, SIU engaged in one overt act of assigning him office and laboratory space. Further, the six-month period was not extended or tolled because petitioner repeatedly renewed his request for SIU to assign him the space he had previously occupied. See *Jones*, 272 Ill. App. 3d at 620 (the court concluded that the petitioner could not extend the six-month period "merely by repeated renewal of his request once it was denied"). Accordingly, we are unpersuaded by petitioner's argument that the six-month time period in which he had to file his claim was tolled.

¶ 48 To the extent that petitioner argued in his charges that SIU violated section 14(a)(8) because it failed to comply with any obligations petitioner believed it had under the arbitrator's award relating to his course assignments, we also find that his claims were untimely and therefore the Board did not have jurisdiction to review these claims. We review the issue of whether an administrative agency has jurisdiction *de novo*. *NorthShore University Healthsystem v. Illinois Department of Revenue,* 2017 IL App (1st) 153647, ¶ 17. Here, the department chair informed petitioner on September 14, 2016, that SIU had modified his workload assignment such that he was not teaching any courses in the fall of 2016 and was teaching two courses in the spring of 2017. On this same day, petitioner requested an informal grievance meeting with SIU regarding his "workload assignments." Thus, petitioner knew, or should have known, by at least September

14, 2016, that SIU was not going to comply with any obligation petitioner believed SIU had under the arbitrator's award relating to his course assignments. Thus, because petitioner knew of this alleged section 14(a)(8) violation by September 14, 2016, which was more than six months before he filed his July 19, 2017, and November 22, 2017, charges, his claims were untimely. The Board therefore did not have jurisdiction to review these claims.

¶ 49    Given our conclusion that the Board did not err in dismissing petitioner's claims that SIU violated section 14(a)(8) of the Act by failing to comply with the arbitrator's award, we need not determine whether collateral estopped applied to his claims.

¶ 50                                    IV. Conclusion

¶ 51    For the reasons explained above, we affirm the Board's decision.

¶ 52    Board decision affirmed. (Administrative review direct to the appellate court.)